**Zakunda–Ze HANDBERRY, et al., Plaintiffs,**

v.

**William C. THOMPSON, Jr., et al. Defendants.**

**No. 96 CIV. 6161(CBM).**

United States District Court, S.D. New York.

March 13, 2000.

for declaratory judgment that the City defendants failed to provide adequate educational services to members of the plaintiff class at all Rikers Island facilities. The court ordered City defendants to file a plan for providing full and complete educational facilities and services to all eligible inmates on Rikers Island. The following outlines the court's reasoning in granting this motion for declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

BACKGROUND

This case involves a class action brought by inmates in the custody of the New York City Department of Correction ("DOC") claiming violation of federal and state laws in the failure to provide them with adequate general and special educational services. Plaintiffs are a class of individuals aged 16 through 21 years who are in the custody of DOC and are entitled to educational services. Defendants are the New York City Board of Education, DOC, and certain City officials sued in their official capacities (collectively referred to as the "City defendants") and Richard Mills, the Commissioner of the New York State Education Department.

The plaintiff class is comprised of school age inmates (inmates between the ages of 16 and 21 years) who are held in 16 DOC jails, including 10 facilities on Rikers Island. The majority of class members are pre-trial detainees and the minority are post-conviction inmates serving sentences of up to one year's duration. Plaintiffs estimate that approximately 2,800 incarcerated youngsters were eligible for educational services at the time this case was filed in 1996. *See* Pls.' Mem. of Law at 3.

Plaintiffs bring this action under 42 U.S.C. § 1983, the United States Constitution, the Individuals with Disabilities in Education Act (the "IDEA"), 20 U.S.C. §§ 1400 *et seq.,* the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.,* and the New York State Constitution, statutory law and regulations.

Legal Aid Society, by Dori Lewis, Mary Lynne Werlwas, for Plaintiffs.

The City of New York Law Department, by Janice Birnbaum, Office of the New York State Attorney General, by Christina Leonard, New York City, for Defendants.

*OPINION GRANTING DECLARATORY JUDGMENT*

MOTLEY, District Judge.

**OPINION**

Following oral argument on January 7, 2000 this court granted plaintiffs' motion

Plaintiffs' claims involve both general and special education. Plaintiffs claim that numerous class members received no or extremely limited educational instruction for significant periods of time in violation of the general education laws. Plaintiffs also estimate that approximately 40% of the class members require special education services due to various disabilities. *See* Pls.' Mem. of Law at 2. Plaintiffs claim defendants violated the IDEA as well as state law by failing to provide appropriate special education services to this substantial portion of the incarcerated population.

STANDARD FOR DECLARATORY OR SUMMARY JUDGMENT

This court granted plaintiffs' motion for declaratory judgment that the City defendants have failed to provide adequate educational services to class members in the facilities on Rikers Island. This order is equivalent to the granting of summary judgment establishing liability. This circuit recognizes the value of summary judgment to expedite the process of litigation. *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir. 1980). The mechanism of summary judgment promotes judicial economy by preventing further litigation on an issue with an unalterably predetermined outcome. The standard for summary judgment ensures that issues are efficiently resolved without compromising the rights of the non-moving party.

> Summary judgment may be granted only if the moving party can show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party.

*Ametex Fabrics, Inc. v. Just In Materials, Inc.,* 140 F.3d 101, 107 (2d Cir.1998) (internal citations omitted). Thus, the mere existence of a factual dispute between parties does not preclude summary judgment when the dispute is not genuine or when the disputed facts are immaterial. A disputed fact is immaterial when the outcome of the case remains the same regardless of the disputed issue. Factual questions which prove immaterial fail to preclude summary judgment. *See Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986) (noting that the existence of unresolved immaterial issues does not suffice to defeat a motion for summary judgment).

A party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment". *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986).

> Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

*Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal citations omitted).

> The possibility that a material issue of fact may exist does not suffice to defeat the motion; upon being confronted with a motion for summary judgment the party opposing it must set forth arguments or facts to indicate that a genuine issue not merely one that is colorable of material fact is present.

*Gibson v. American Broadcasting Companies,* 892 F.2d 1128, 1132 (2d Cir.1989).

## DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

In granting plaintiffs' motion for summary judgment this court in effect also denied defendants' cross motion for summary judgment. The court now turns its attention to the various theories under which defendants sought to have this case dismissed.

## MOOTNESS

■ This suit cannot be dismissed for mootness. Plaintiffs have offered uncontradicted evidence that defendants routinely failed to provide adequate educational services to class members at the time this suit commenced in 1996. It is undisputed that the educational services provided to inmates in New York prisons have improved in the past four years. In the case of a meritorious and lengthy class action it would be disheartening if improvements did not occur during the duration of the law suit. However, even if such improvements were significant enough to raise the educational services up to the level required by law, plaintiffs' claims would still survive any challenge of mootness as the controversy could easily recur. Absent a declaratory judgment that past practices violated class members' rights, defendants might allow the services provided to slip below the acceptable level. *See Desiderio v. NASD*, 191 F.3d 198, 202 (2d Cir.1999)(holding that a voluntary change in defendants' policies did not render the controversy moot because defendants might later amend their policy to revert to the challenged practice). Thus, even if defendants could show that the educational services currently provided adequately served all class members, the controversy is still not mooted.

## ABSTENTION

■ Defendants have argued that the court should abstain from adjudicating this case. Defendants' abstention argument may be charitably described as misguided. The abstention doctrine applies only in rare circumstances to promote federal-state comity by preventing federal courts from rendering a decision which would disrupt the establishment of a coherent state policy. *See Ankenbrandt v. Richards*, 504 U.S. 689, 704–5, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). This circuit has noted that application of the abstention doctrine requires the existence of three conditions: 1) unclear state law, 2) resolution of a federal issue depending upon resolution of this lack of clarity in the state law, and 3) the existence of an interpretation of the state law that avoids the federal constitutional question presented. *See Planned Parenthood of Dutchess–Ulster, Inc. v. Steinhaus*, 60 F.3d 122, 126 (2nd Cir.1995). Far from challenging the constitutionality of state statutes, plaintiffs simply seek to enjoy the benefits promised by those statutes. Even if the parties genuinely dispute how many hours of instruction New York law requires, this court may easily establish defendants' liability when no hours of instruction were provided to many class members. Even if the parties genuinely dispute the extent to which New York law requires accommodation of special educational needs, this court may easily establish defendants' liability when many class members with learning disabilities received no special educational services. Defendants' limited provision of educational services to class members violates the applicable state laws under any reasonable interpretation of those laws. Thus, no intricate question of state law interpretation warrants abstention in this case.

## FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

■ Defendants seek to have plaintiffs' claims dismissed for failure to exhaust all available administrative remedies. This is not the first occasion a defendant in this case has proffered this tenuous argument. The weakness of this argument was clearly explained in the Report and Recommendation of Magistrate Judge James C. Francis IV dated December 10, 1996 as adopted by order of Judge Kimba M. Wood dated May 27, 1997. This court is equally unpersuad-

ed by City defendants' exhaustion argument. The Prison Litigation Reform Act of 1995 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996) does not require prospective plaintiffs to avail themselves of the grievance procedure for issues outside the jurisdiction of DOC. Resolution of plaintiffs' claims for educational services falls beyond the powers of DOC and thus the claims are not barred by the PLRA's exhaustion requirement. Because the nature of relief sought by plaintiffs makes the exhaustion requirement inapplicable in this case, the court need not address the broader issue of whether the PLRA's exhaustion requirement applies to bona fide class actions in general.

## PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT

█ The plaintiff class is comprised of persons between the age of 16 and 21 years who have not earned a high school degree and are held in the custody of DOC. New York law creates an entitlement to education for all youngsters between the ages of 5 and 21 years. N.Y. Educ. L. § 3202. The manner in which a society treats its prisoners offers unparalleled insight into its degree of civilization. *See* F. Dostoyevsky, *The House of the Dead* (1861). Thus, in an enlightened state like New York, the fact that a youngster becomes incarcerated does not imply that he or she has forfeited the entitlement to education. N.Y. Educ. L. § 3202(7); 9 NYCCR § 7070.1–7070.2 (defining incarcerated youngsters eligible for educational services when they are incarcerated or likely to be incarcerated for ten or more days). It is well settled from high authority that when state law guarantees a free public education this creates a constitutionally protected property interest. *See Goss v. Lopez,* 419 U.S. 565, 574–76, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Defendants clearly may not abrogate plaintiffs' constitutionally protected property interests without any procedural safeguards without running afoul of the due process clause.

█ The plaintiff class contains two groups of inmates: the younger inmates for whom full time educational instruction is mandatory and the older inmates who are entitled, but not required, to receive at least part-time schooling. N.Y. Educ. L. § 3205 ( requiring full time instruction for 6 to 17 year old students and offering part-time instruction to prospective students between the ages of 18 and 21 years who have not yet earned a high school diploma). Extensive regulations govern the quality and quantity of such instruction in far greater detail than the court need consider here. Plaintiffs have produced uncontradicted evidence that many class members received no educational services for significant lengths of time. As particularly egregious examples, plaintiffs have put forward unrefuted evidence that hundreds of adolescent inmates held in special housing areas (such as homosexual housing, protective custody, mental observation, administrative segregation and punitive segregation) received absolutely no schooling during many semesters. Dispute as to the exact number of these inmates proves immaterial as there can be no genuine dispute that the total failure to provide any general education services to any eligible inmates is not a violation of those inmates' rights.

█ As mentioned above, plaintiffs have also proffered uncontradicted evidence that a substantial number of class members suffer from learning disabilities rendering their educational entitlements subject to the IDEA as well as New York laws governing special education. Just like the general entitlement to a free public education, the entitlement to special education services is not trumped by incarceration. The IDEA requires school districts to proactively attempt to identify all youngsters with disabilities and, for each child, develop an individualized education plan ("IEP") tailored to meet that child's unique learning needs. 20 U.S.C. § 1414. The relevant statutes and regulations provide great detail as to the minimal require-

ments of creating and implementing these IEPs. Plaintiffs have presented unrefuted evidence as to the limited efforts defendants have undertaken to identify class members in need of special education, the paltry number of IEPs developed at Rikers Island, the frequent failure to obtain existing IEPs created for class members prior to their incarceration, the lack of special classroom facilities and resource rooms, and the systematic failure to tailor class members' educational programs to meet their special educational needs. There can be no genuine dispute that the total failure to provide any special education services to eligible inmates is not a violation of those inmates' rights.

New York law grants class members a property right to a free and appropriate education. Under any reasonable interpretation of the relevant laws, defendants have prevented class members from enjoying this property right without any procedural protections prior to this deprivation. For these reasons the court granted a motion for declaratory judgment establishing City defendants' liability for failure to provide class members with adequate educational services. The court also ordered City defendants to file a plan for providing full and complete educational services for all eligible inmates of Rikers Island. This remedy serves to prevent future such violations of class members' rights.

This court cannot overstate the importance of education for youngsters in general but especially for youth whose encounters with the legal system have gained them membership in the plaintiff class. Depriving class members of adequate educational services for the duration of their incarceration not only deprives those individuals of their rights but also poorly serves the larger society to which class members will return, and hopefully remain, upon their release. The court has ordered defendants to devise a plan to ensure that the City defendants provide adequate educational services to inmates on Rikers Island in years to come. The better the educational services provided the greater the chance that the seeds of

learning may bloom in prison air so that someday only ignorance will waste and wither there. *See* O. Wilde, "The Ballad of Reading Gaol" (1898).

CONCLUSION

For the reasons outlined above the court granted plaintiffs' motion for declaratory judgment, establishing the City defendants' liability for failure to provide adequate general and special educational services to class members at the facilities on Rikers Island.